UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAQUWANNE TERRIL RUTLEY,

        Petitioner,

                                  CASE NO. 2:11-CV-14414

v.                              JUDGE GEORGE CARAM STEEH

                                  MAGISTRATE JUDGE PAUL J. KOMIVES

PAUL KLEE,

        Respondent.[1]

_____/

## REPORT AND RECOMMENDATION

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.    *Exhaustion/Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     E.    *Weight and Sufficiency of the Evidence (Claims I & II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
           1.    *Weight of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
           2.    *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
                 a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
                 b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     F.    *Prosecutorial Misconduct (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
           1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
           2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
     G.    *Sentencing (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
           1.    *Guidelines Scoring* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
           2.    *Inaccurate Information* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
           3.    *Blakely* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
     H.    *Double Jeopardy (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
           1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
           2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
     I.    *Ineffective Assistance of Counsel (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
           1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
           2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
     J.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . 33
           1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
           2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
     K.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

_____

[1]By Order entered this date, Paul Klee has been substituted in place of Carol A. Howes as the proper respondent in this action.

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     <u>REPORT</u>:

A.      *Procedural History*

        1.      Petitioner Jaquwanne Terril Rutley is a state prisoner, currently confined at the Gus Harrison Correctional Facility in Adrian, Michigan.

        2.      On February 25, 2009, petitioner was convicted of assault with intent to rob while armed, MICH. COMP. LAWS § 750.89; assault with a dangerous weapon (felonious assault), MICH. COMP. LAWS § 750.82; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Washtenaw County Circuit Court.  On March 25, 2009, he was sentenced to concurrent terms of 6-20 years' imprisonment on the assault with intent to rob conviction and 2-4 years' imprisonment on the felonious assault conviction, both consecutive to a mandatory term of two years' imprisonment on the felony firearm conviction.

        3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

        I.      THE DEFENDANT'S CONVICTION FOR ASSAULT WITH INTENT TO ROB WHILE ARMED SHOULD BE OVERTURNED BECAUSE THERE WAS INSUFFICIENT CREDIBLE EVIDENCE AT TRIAL TO PROVE THE DEFENDANT GUILTY OF THAT CRIME.

        II.     THE DEFENDANT'S CONVICTION FOR ASSAULT WITH INTENT TO ROB WHILE ARMED MUST BE REVERSED BECAUSE IT IS AGAINST THE GREAT WEIGHT OF THE EVIDENCE AND INVOLVES A MISCARRIAGE OF JUSTICE.

        III.    THE TRIAL JUDGE ERRED BY NOT GRANTING THE DEFENDANT'S MOTION FOR A NEW TRIAL, INCLUDING A DIRECTED VERDICT MOTION, BASED ON A LACK OF SUFFICIENT CREDIBLE EVIDENCE.

2

IV.    THE PROSECUTOR'S ACTIONS DENIED THE DEFENDANT A FAIR
       TRIAL AND HIS DUE PROCESS RIGHTS UNDER THE MICHIGAN
       AND FEDERAL CONSTITUTIONS.

V.     THE DEFENDANT'S SENTENCE FOR THE CRIME OF ASSAULT
       WITH INTENT TO ROB WHILE ARMED WAS INVALID BECAUSE IT
       WAS BASED ON INACCURATE INFORMATION, I.E., IMPROPER
       SCORING OF THE LEGISLATIVELY IMPOSED SENTENCING
       GUIDELINES, USE OF AN INCORRECT BURDEN OF PROOF, AND
       INSUFFICIENT FACTS; THEREFORE, HIS DUE PROCESS RIGHTS
       WERE VIOLATED.

VI.    CORRECTLY SCORING THE GUIDELINES WOULD REQUIRE
       RESENTENCING.

VII.   THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL
       COUNSEL.

Petitioner also filed a *pro se* supplemental brief, raising the following additional claim:

VIII.  DEFENDANT'S CONVICTIONS FOR ASSAULT WITH INTENT TO
       ROB WHILE ARMED AND ASSAULT WITH A DANGEROUS
       WEAPON ARE PROHIBITED BY DOUBLE JEOPARDY; ALSO
       REMOVING THE ASSAULT WITH A DANGEROUS WEAPON
       CONVICTION WOULD CHANGE THE PRV SCORING, WHICH
       WOULD CHANGE THE GUIDELINE RANGE, WHICH WOULD
       REQUIRE RESENTENCING.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Rutley*, No. 291682, 2010 WL 4866463 (Mich. Ct. App. Nov. 20, 2010) (per curiam).

4.    Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan
Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard
order.  *See People v. Rutley*, 489 Mich. 934, 797 N.W.2d 146 (2011).

5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus
on October 6, 2011.  As grounds for the writ of habeas corpus, he raises the sufficiency of the
evidence, weight of the evidence, prosecutorial misconduct, sentencing, and ineffective assistance

of counsel claims raised in the state courts (Claims I, II, IV, V, and VII in the court of appeals), as well as the double jeopardy claim raised in his *pro se* brief.

6.      Respondent filed his answer on March 12, 2012.  He contends that a portion of petitioner's ineffective assistance of counsel claim is unexhausted, petitioner's prosecutorial misconduct and double jeopardy claims are barred by petitioner's procedural default in the state courts, and that all of petitioner's claims are without merit.

B.      *Factual Background Underlying Petitioner's Conviction*

The evidence underlying petitioner's convictions was accurately summarized by the Michigan Court of Appeals:

> While on his way home from an Ypsilanti bar, the complainant encountered defendant and defendant's two companions walking on the opposite side of the street.  One of the three asked the complainant for a lighter, and the complainant eventually walked across the street and gave one of the men his lighter.  The complainant was asked if he wanted some marijuana, and he responded that he did not use the drug.  At this point, one of the men produced a chrome pistol and demanded that the complainant surrender his valuables.  A struggle ensued, during which the complainant was struck several times with the pistol.  He ultimately escaped and contacted police.  The three suspects were eventually located and apprehended.  Defendant was one of the three.  During questioning, defendant admitted that he had struck the complainant with the gun.

*Rutley*, 2010 WL 4866463, at *1.  The bulk of the evidence against petitioner came from the testimony of the victim, who testified as to the circumstances of the incident; Officer Yuhas, who testified to petitioner's statement; and petitioner's accomplice, Christian Griffin.

C.      *Exhaustion/Procedural Default*

Respondent contends that petitioner's prosecutorial misconduct and double jeopardy claims are barred by petitioner's procedural default in the state courts because petitioner failed to object in the trial court.  Under the procedural default doctrine, a federal habeas court will not review a

question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also, Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Regardless of whether these claims are defaulted, petitioner asserts that counsel was ineffective with respect to these claims. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Consideration of counsel's effectiveness, however, depends in part on consideration of petitioner's underlying claims. Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

5

Respondent also asserts in his answer that "Petitioner has partially failed to exhaust claim V in the state courts as more fully discussed below." Answer, at 7. In the "below" discussion of Claim V, however, respondent does not argue the exhaustion issue nor explain what particular portion of Claim V is not exhausted. As the Michigan Supreme Court has eloquently explained, "[i]t is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v. Taylor*, 457 Mich. 232, 243, 577 N.W.2d 100, 105 (1998) (internal quotation omitted); *see also*, *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."). Accordingly, the Court should proceed to the merits of Claim V.

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that

7

the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the

8

decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.     *Weight and Sufficiency of the Evidence (Claims I & II)*

        In his first two claims, petitioner contends that the evidence was insufficient to prove his guilt beyond a reasonable doubt, and that the jury's verdict was against the great weight of the evidence.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

        1.     *Weight of the Evidence*

        To the extent that petitioner argues that he is entitled to habeas relief because the jury's verdict was against the great weight of the evidence, his claim is not cognizable.  It is well established that habeas review is not available to correct errors of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws.").  The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia, infra*.  Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review.  *See Douglas v. Hendricks*, 236 F. Supp. 2d 412, 435-36 (D.N.J.  2002); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002) (Friedman, J.); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001); *cf. Tibbs v. Florida*, 457 U.S. 31, 44 (1982) (noting in a different context that "trial and appellate

9

judges commonly distinguish between weight and sufficiency of the evidence."). In short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight of the evidence.'" *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).

Thus, the only question here is whether the evidence was constitutionally sufficient to prove all of the elements of the offense for which petitioner was convicted beyond a reasonable doubt.

2.    *Sufficiency of the Evidence*

a. *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam). The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). Likewise, a reviewing court "do[es] not make

10

credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326. As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam). A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16). Michigan law provides that "[a]ny person, being armed with a dangerous weapon, or any article used or fashioned in a manner to lead a person so assaulted reasonably to

11

believe it to be a dangerous weapon, who shall assault another with intent to rob and steal shall be guilty of a felony, punishable by imprisonment in the state prison for life, or for any term of years." MICH. COMP. LAWS § 750.89.[2] "'The elements of assault with intent to rob while armed are: (1) an assault with force and violence; (2) an intent to rob or steal; and (3) the defendant's being armed. Because this is a specific-intent crime, there must be evidence that the defendant intended to rob or steal.'" *People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863, 873 (2003) (quoting *People v. Cotton*, 191 Mich. App. 377, 391, 478 N.W.2d 681, 688 (1991)). As with other mental state elements, intent to rob need not be proved by direct evidence, but rather may be proved by circumstantial evidence and reasonable inferences drawn from the evidence. *See Ballinger v. Warren*, No. 2:06-CV-13520, 2012 WL 1397413, at *5 (E.D. Mich. Apr. 23, 2012); *People v. Harris*, 110 Mich. App. 636, 641, 313 N.W.2d 354, 358 (1981). *See generally*, *Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998). "Furthermore, because it is difficult to prove a defendant's state of mind, minimal circumstantial evidence is sufficient." *Tucker v. Palmer*, 541 F.3d 652, 660 (internal quotation omitted).

## b. Analysis

Petitioner contends that the evidence was insufficient to prove that he had the intent to rob the victim at the time the assault was committed. He argues that his statement to the police only established an assault, and that the testimony of the victim and his accomplice was not credible. The Michigan Court of Appeals rejected this claim, explaining:

> The premise of defendant's challenge to the sufficiency of the evidence–indeed the premise of each of his disputes concerning the evidence–is that the testimony of the complainant and that of one of defendant's companions was so

---

[2]Although petitioner was convicted at other crimes, his sufficiency claim is primarily directed at the assault with intent to rob while armed conviction, particularly the intent element.

incredible that the jury was not justified in finding him guilty of the crime. Defendant essentially asks us to disregard longstanding precedent and to invade the jury's province by independently assessing and weighing on appeal the credibility of the testimony produced at trial. This we may not do. The trier of fact is in a position superior to this Court with respect to evaluating witness credibility. *People v. Aldrich*, 246 Mich. App. 101, 124, 631 N.W.2d 67 (2001). The trier of fact is also charged with the responsibility of "determin[ing] what inferences may be fairly drawn from the evidence and ... determin[ing] the weight to be accorded those inferences." *People v. Hardiman*, 466 Mich. 417, 428, 646 N.W.2d 158 (2002). We will not second-guess the jury's credibility determinations on appeal. *See People v. Wolfe*, 440 Mich. 508, 514-515, 489 N.W.2d 748, amended 441 Mich. 1201 (1992).

*Rutley*, 2010 WL 4866463, at *1. This determination was reasonable.

There is no question that the prosecution presented which, if believed, was sufficient to prove beyond a reasonable doubt that petitioner intended to rob the victim. The victim testified that after he had offered his lighter to the men and he denied their offer to sell him marijuana, one of the men pulled out a pistol and said "give me all your shit, bitch." Trial Tr., Vol. II, at 35. He ran, and one of the men chased him, grabbed him by the shoulder, and again demanded his property. *See id*. The victim identified that man as petitioner. *See id*. at 35-36. Petitioner's accomplice testified that he, petitioner, and the third accomplice discussed robbing someone. *See id*. at 116-17. He further testified that petitioner pulled the gun on the victim and demanded the victim's money. *See id*. at 120-21. The testimony of Griffin that he and petitioner planned to commit a robbery, coupled with the testimony of both Griffin and the victim that petitioner demanded the victim's money or property, was more than sufficient to prove that petitioner intended to rob the victim at the time of the assault.

Petitioner argues that the evidence was insufficient because the testimony of the victim and Griffin was not credible. Specifically, petitioner points to evidence that the victim was drunk at the time of the offense, evidence that both the victim and Griffin had lied or given inconsistent stories,

inconsistencies between the testimony of the victim and that of Griffin, and Griffin's motive to testify in exchange for a favorable plea deal. As noted above, however, in reviewing the sufficiency of the evidence this Court does not make credibility determinations, nor does it reweigh the evidence. A reviewing court may reverse a jury's credibility determinations only where the testimony is incredible as a matter of law, "such as where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." *United States v. Radziszewski*, 474 F.3d 480, 485 (7th Cir. 2007) (internal quotation omitted); *accord United States v. Smith*, 606 F.3d 1270, 1281 (10th Cir. 2010); *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009); *United States v. Gadison*, 8 F.3d 186, 190 (5th Cir. 1993). Here, neither Griffin's nor the victim's testimony was impossible based on their ability to observe or the laws of nature. "Testimony is not incredible as a matter of law . . . only because the witness may have been impeached . . . by the existence of a motive to provide evidence favorable to the government." *United States v. Alcantar*, 83 F.3d 185, 189 (9th Cir. 1996). Likewise, the fact that the witnesses' testimony was inconsistent with prior accounts or with the testimony of other witnesses does not render the testimony incredible on its face. *See United States v. Patterson*, 23 F.3d 1239, 1244 n.5 (7th Cir. 1994). And the fact that the victim was intoxicated at the time of the offense does not render his testimony inherently incredible. *See United States v. L.C.D.*, 399 Fed. Appx. 129, 131 (8th Cir. 2010); *Grunder v. Easterling*, No. 4:09-cv-22, 2010 WL 3724867, at *11, *13 (E.D. Tenn. Sept. 16, 2010); *Corines v. Superintendent, Otisville Correctional Facility*, 621 F. Supp. 2d 26, 37 (E.D.N.Y. 2008).

The *Jackson* standard does not permit "fine-grained factual parsing" of the evidence by a reviewing court, *Coleman*, 132 S. Ct. at 2064, nor does it permit this Court to reweigh the conflicts

in the evidence or assess the credibility of the witnesses. The jury was free to draw any reasonable inferences from the evidence, and to resolve the conflicts in the evidence in favor of the prosecution. In light of the testimony of the victim and petitioner's accomplice that the robbery was preplanned and that petitioner demanded the victim's money or property, the jury's verdict does not "fall below the threshold of bare rationality." *Id*. at 2065. It follows that the Michigan Court of Appeals's rejection of this claim was a reasonable application of *Jackson*. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Prosecutorial Misconduct (Claim III)*

Petitioner next contends that he was denied a fair trial by several instances of prosecutorial misconduct. Specifically, he argues that the prosecutor: (1) made an improper civic duty argument; (2) vouched for the credibility of the witnesses; and (3) denigrated him and his defense. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. (internal quotation omitted). *Darden* constitutes "[t]he 'clearly established Federal law' relevant" to a prosecutorial misconduct claim. *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (per curiam). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case-determinations.'"

15

*Parker*, 132 S. Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   In reviewing whether prosecutorial comments deprived a defendant of a fair trial, a court may not consider the remarks in isolation, but must consider the remarks in the context of the entire trial, including the prosecutor's appropriate comments, the court's instructions to the jury, and the evidence presented in the case.  *See Brown v. Payton*, 544 U.S. 133, 144 (2005); *United States v. Young*, 470 U.S. 1, 11 (1985); *Donnelly v. DeChristoforo*, 416 U.S. 636, 645 (1974).  Even on direct review, where AEDPA deference does not apply, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone."  *Young*, 470 U.S. at 11.

    2.    *Analysis*

Petitioner first contends that the prosecutor improperly appealed to the jury's sense of civic duty.  In discussing the victim's testimony, the prosecutor rhetorically asked the jury, "[c]an you imagine that situation for him?  All alone, 2:00 in the morning, and these three guys with a gun come up and they try to rob him and he thinks I've got to get away from here to save my life . . . ."  Trial Tr., Vol. III, at 40.   Later, in responding to defense counsel's attack on the victim's credibility during counsel's closing argument, the prosecutor argued that the victim was "a victim of a crime, that's who he is.  This [obviously referencing petitioner] is a criminal.  This is a defendant, a person who commits crimes against people like Justin Johnson." *Id.* at 65.  The Michigan Court of Appeals rejected petitioner's claim, concluding that the latter comment was a fair response to defense counsel's characterization of the victim and that there was "no merit in defendant's assertion that the prosecutor asked the jury to convict defendant out of a sense of civil responsibility."  *Rutley*, 2010 WL 4866463, at *3.  This determination was reasonable.

A "civic duty" argument is one which "encourages the jury to convict the defendant based

upon principles of protection of the community and encourages them to ignore the evidence in the case." *United States v. Mejorado-Soto*, No. 94-2404, 1995 WL 764115, at *2 (6th Cir. Dec. 27, 1995) (per curiam). Here, the prosecutor did not encourage the jury to convict by ignoring the evidence. The comment about petitioner being a criminal was made in the context of the prosecutor's fair response to defense counsel's denigration of the victim. *See Darden v. Wainwright*, 477 U.S. 168, 182 (1986)(one factor in evaluating claims of prosecutorial misconduct is whether the prosecutor's statements were "invited by or was responsive" to the defense.). Further, even if the prosecutor's references to the victim were improper, they were much less prejudicial than other comments referring to victims which have been upheld on habeas review. *See, e.g.*, *Brechen v. Reynolds*, 41 F.3d 1343, 1355-56 (10th Cir. 1994); *United States ex. rel. Rockman v. DeRobertis*, 717 F. Supp. 553, 569-70 (N.D. Ill. 1989)(prosecutor's reference to victim "in his grave crying out for a guilty verdict" did not deprive petitioner of a fair trial); *Kordenbrock v. Scroggy*, 680 F. Supp. 867, 896-96 (E.D. Ky. 1988)(petitioner was not denied a fair trial where, during the guilt-innocence phase of the trial, the prosecutor admonished the jury not to forget the victim because "he had a right to live."), *rev'd on other grounds*, 919 F.2d 1091 (6th Cir. 1999) (en banc). "Indeed, *Darden* itself held that a closing argument considerably more inflammatory than the one at issue here did not warrant habeas relief." *Parker*, 132 S. Ct. at 2155 (citing *Darden*, 477 U.S. at 180, nn. 11 & 12 (prosecutor referring to defendant as an "animal" and stating "I wish I could see [the defendant] with no face, blown away by a shotgun.")). Even if improper, viewed in context the comments were only mildly so, and in light of the overwhelming evidence and the trial court's instruction to the jury that its verdict should be based on the evidence and the law and not on sympathy the arguments were not so prejudicial as to deprive petitioner of a fair trial. *See Knapp v. White*, 296 F. Supp. 2d 766, 776

17

(E.D. Mich. 2003) (Gadola, J.).

Petitioner next contends that the prosecutor improperly vouched for the credibility of Griffin by eliciting testimony from a police officer regarding what steps the officer took to reconcile the conflicting statements Griffin had given, and in particular about the officer's repeated questioning of Griffin based on the officer's concerns regarding the veracity of Griffin's initial statements. The Michigan Court of Appeals concluded that this questioning did not deprive petitioner of a fair trial because "[a]ny testimony suggesting that the police officer had concerns about the witness's veracity . . . would have actually supported defendant's theory that the witness's testimony had been fabricated in order to secure a plea bargain," and because the testimony was admissible "because it provided a perspective for understanding why the officer continued to question the witness." *Rutley*, 2010 WL 4866463, at *3. This determination was reasonable. Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also*, *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).[3] Here, the prosecutor did neither. Rather, the prosecutor questioned a police witness regarding inconsistent statements Griffin had given. Such bolstering of one witness by another witness does not raise constitutional concerns. *See Diaz v. Greiner*, 110 F. Supp. 2d 225, 234 (S.D.N.Y. 2000). Further, the prosecutor did not elicit testimony from the officer as the officer's opinion of Griffin's veracity. In these

---

[3]Some cases referring to only the first type of comment as "vouching" and describe the second type of comment as "bolstering." *See Francis*, 170 F.3d at 551.

circumstances, petitioner cannot show that he was denied a fair trial.

Finally, petitioner contends that the prosecutor improperly denigrated him and the defense. During rebuttal argument, the prosecutor argued, based on a legal saying, that defense counsel "pounded on the table" because he did not have the facts or law on his side. *See* Trial Tr., Vol. III, at 64-65. The prosecutor also expressed her frustration that the victim's "reward" for being a victim was to be "brought in here [and] be[] picked at by these two defense attorneys." *Id*. at 65. Finally, the prosecutor, as part of the same discussion, stated that petitioner was a "criminal." *Id*. As noted in connection with petitioner's civic duty argument, the prosecutor's statements regarding the victim were a fair response to defense counsel's disparaging of the victim. And the prosecutor's comment that defense counsel "pounded the table" because he could not pound the facts or the law was not prejudicially improper. The comment falls far short of even more egregious comments which have been held not to deprive a defendant of a fair trial. *See Kappos v. Hanks*, 54 F.3d 365, 367-68 (7th Cir. 1995) (petitioner not denied a fair trial where prosecutor referred to him as a "murderer" and "artful liar"); *See United States v. August*, 984 F.2d 705, 714-15 (6th Cir. 1992) (on direct review of federal conviction, prosecutor's comment that defense counsel was trying to trick the jury did not rise to the level of prosecutorial misconduct, noting that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for truth."); *Lindgren v. Lane*, 925 F.2d 198, 204 (7th Cir. 1991) (prosecutor's comments that defense theory was rife with inconsistencies, that defense counsel pulled "these inconsistencies like a magician pulls rabbits out of his hats," and that defense counsel was trying to "trick" the jury with "illusions" were not so egregious as to warrant habeas relief); *Irwin v. Singletary*, 882 F. Supp. 1036, 1043-44 (M.D. Fla. 1995) (habeas relief not

19

warranted based on prosecutor's statement during closing argument that defendant was "grasping at straws").

In short, the Michigan Court of Appeals thoroughly analyzed each of petitioner's prosecutorial misconduct claims, applying the appropriate due process test under *Darden*. For the reasons set forth above, the Michigan Court of Appeals's application of that test was reasonable. "[B]ecause the *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations,' [this Court] ha[s] no warrant to set aside the [Michigan Court of Appeals's] conclusion." *Parker*, 132 S. Ct. at 2155. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on petitioner's prosecutorial misconduct claims.

G.     *Sentencing (Claim IV)*

Petitioner next raises various challenges to his sentence. Specifically, petitioner contends that the trial court erred in scoring the sentencing guidelines and sentenced him on the basis of inaccurate information. Further, although not clearly raised here, in the state courts petitioner raised a *Blakely* challenge to his sentence. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Guidelines Scoring*

With respect to the scoring of the guidelines, petitioner's claim is not cognizable on habeas review. A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness

20

in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Thus, petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

2.      *Inaccurate Information*

Petitioner's contention that he was sentenced on the basis of inaccurate information is without merit. In *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States v. Tucker*, 404 U.S. 443 (1972), "the United States Supreme Court invalidated defendants' sentences because they were imposed by trial courts in reliance upon material false assumptions of fact." *Eutzy v. Dugger*, 746 F. Supp. 1492, 1504 (N.D. Fla. 1989) (discussing *Townsend* and *Tucker*); *accord Stewart v. Peters*, 878 F. Supp. 1139, 1144 (N.D. Ill. 1995) (same). *See generally*, *Tucker*, 404 U.S. at 448-49; *Townsend*, 334 U.S. at 740-41. It is well established, however, that a *Tucker* violation arises only where the improper information  "actually served as the basis for the sentence." *United States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002) (internal quotation omitted); *see also*, *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003); *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir. 1985). "A sentencing court demonstrates reliance on misinformation when the court gives 'explicit

21

attention' to it, 'found[s]' its sentence 'at least in part' on it, or gives 'specific consideration' to the information before imposing sentence." *Lechner*, 341 F.3d at 639 (quoting *Tucker*, 404 U.S. at 444, 447). Thus, to be entitled to habeas relief on this claim petitioner "must show that the sentencing court actually relied on this information and that it was materially false." *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1074 (E.D. Mich. 2000) (Gadola, J.).

Petitioner does not argue that any of the guidelines were scored on the basis of any inaccurate information. Rather, he contends that several offense variables and prior record variables were corrected at sentencing, but that the actual sentence imposed did not reflect these corrections. The sentencing transcript, however, belies this claim. After the trial court, upon defense counsel's objections, had altered several offense variable scores, defense counsel indicated that the corrections resulted in an offense variable score of 20, which counsel agreed yielded an offense level 2, with a resulting range of 51-85 months' imprisonment on the minimum sentence. *See* Sentence Tr., at 20-22. In imposing sentence, the court explicitly recognized that "the recommendation of [the] probation [department] is outside the now guidelines so the Court will fashion a sentence that is within the guidelines." *Id*. at 29. The court then sentenced petitioner to a term of six years (or 72 months') imprisonment on the minimum term, a term within the correctly scored range. *See id*. Thus, the record shows that the trial court made the appropriate corrections to the guidelines, and that petitioner's sentence was not based on any inaccurate information regarding the guidelines scoring. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.    *Blakely*

In the state courts, petitioner's sentencing claim included an argument based on *Blakely v.*

22

*Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  To the extent petitioner asserts such a claim here, it is without merit.  In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines.  The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed.  The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).  Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. *See Booker*, 543 U.S. at 233, 237-43.

     *Blakely* and *Apprendi*, however, are inapplicable here.  Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*.  Under Michigan law the defendant is given a sentence with a minimum and a maximum

23

sentence.  The maximum sentence is not determined by the trial judge but is set by law.  *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8.  "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790.  Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)).  Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant).  As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence.  The maximum is, in every case, the statutory maximum authorized by law.  *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction on the armed robbery charge, therefore, contained all of the factual findings necessary to impose the statutory maximum (life imprisonment) on that charge.  *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum'

24

sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely*. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme Court explained in *Harris v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in *Blakely*. Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme,

under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment, as both the Sixth Circuit and the Michigan Supreme Court have repeatedly held.  *See Montes v. Trombley*, 599 F.3d 490, 496-97 (6th Cir. 2010); *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.     *Double Jeopardy (Claim VI)*

Petitioner next contends that his convictions and sentences for both assault with intent to rob and felonious assault violate the Double Jeopardy Clause.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense."  *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

However, in the context of multiple punishments, the Double Jeopardy Clause does not

prohibit a state from defining one act of conduct to constitute two separate criminal offenses.  As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . ., the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  Thus, "even if the two statutes proscribe the same conduct, the Double Jeopardy Clause does not prevent the imposition of cumulative punishments if the state legislature clearly intends to impose them." *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986).  As the Supreme Court explained, when "a legislature specifically authorizes cumulative punishments under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).  In determining whether the Michigan legislature intended to authorize separate, cumulative punishments in the circumstances present here, the Court "must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments[.]" *Brimmage*, 793 F.2d at 1015; *see also*, *Hunter*, 459 U.S. at 368.  Thus, the question is whether the Michigan Legislature intended that a single assault meeting the elements of both the armed robbery and carjacking statutes give rise to separate criminal liability; if so, the "court's inquiry is at an end" and there is no double jeopardy violation.  *Id*. at 499 n.8.  In making this determination, the Court is bound by the Michigan courts' interpretation of state law.  *See Rodgers v. Bock*, 49 Fed. Appx. 596, 597 (6th Cir. 2002); *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

Where the legislative intent is not clear, the Court must apply the *Blockburger* "same elements" test to determine whether multiple prosecutions or punishments violate the Double

Jeopardy Clause.  Under this test:

> In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies.  The same-elements test, sometimes referred to as the "*Blockburger*" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offense" and double jeopardy bars additional punishment and successive prosecution.

*United States v. Dixon*, 509 U.S. 688, 696 (1993) (citations omitted); *see also*, *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

2.    *Analysis*

The Michigan Court of Appeals, applying the *Blockburger* test, rejected petitioner's claim, concluding that "[b]ecause conviction of each crime requires proof of an element that the other does not, there has been no double jeopardy violation."  *Rutley*, 2010 WL 4866463, at *4.  This determination was reasonable.  As explained above, "'[t]he elements of assault with intent to rob while armed are: (1) an assault with force and violence; (2) an intent to rob or steal; and (3) the defendant's being armed.'" *People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863, 873 (2003) (quoting *People v. Cotton*, 191 Mich. App. 377, 391, 478 N.W.2d 681, 688 (1991)).   Under Michigan law, "[t]he elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864, 869 (1996) (citing *People v. Davis*, 216 Mich. App. 47, 53, 549 N.W.2d 1, 5(1996)).   As these elements show, and as the Michigan Court of Appeals has explained, each offense requires proof an element not required by the other offense:

> Felonious assault requires the use of an actual dangerous weapon, i.e., a gun, knife, iron bar, club, brass knuckles, or some other instrument used in a manner intended

28

> to inflict injury or to place the victim in reasonable apprehension of an immediate battery. In contrast, assault with intent to rob while armed requires a specific intent to rob or steal, an element not necessary to convict a person of felonious assault, but does not require the use of an actual dangerous weapon–the use of a feigned weapon is sufficient. Hence, each of the offenses requires proof of a fact that the other does not, notwithstanding a substantial overlap in the proof offered to establish the crimes.

*People v. Cammon*, No. 303332, 2012 WL 1521587, at \*2 (Mich. Ct. App. May 01, 2012) (per curiam).  Because each offense requires proof of an element not required by the other offense, there is no double jeopardy violation.

Petitioner contends that his multiple convictions violate the Double Jeopardy Clause because they arise from the same transaction or conduct.  Although the Supreme Court adopted briefly a "same conduct" test for successive prosecutions in *Grady v. Corbin*, 495 U.S. 508 (1990), the Court quickly overruled that decision in *Dixon*, making clear that the only inquiry was whether the offenses satisfied the *Blockburger* same elements test and expressly disavowing any "same conduct" or "same transaction" test.  *See Dixon*, 509 U.S. at 704, 709 n.14; *see also*, *Yparrea v. Dorsey*, 64 F.3d 577, 579 (10th Cir. 1995) ("After *Dixon*, . . . double jeopardy does not occur as long as each punished offense requires proof of a fact that the other does not.").  Morever, even under *Grady*, every federal court of appeals held that *Grady* was limited to successive prosecutions, and that the *Blockburger* same elements test applied to multiple punishments arising in a single prosecution.  *See United States v. Parker*, 960 F.2d 498, 501-02 (5th Cir. 1992) (citing cases); *see also*, *Dixon*, 509 U.S. at 745-46 (Blackmun, J., concurring in the judgment in part and dissenting in part) (disagreeing with the Court's rejection of *Grady* but noting that the same elements test was the appropriate test in the multiple punishment context).  Thus, petitioner's reliance on the same conduct test is misplaced.

For similar reasons, petitioner's reliance on *Brown v. Ohio*, 432 U.S. 161 (1977), is

misplaced. In *Brown*, the Court held that the Double Jeopardy Clause "forbids successive prosecution . . . for a greater and lesser included offense." *Id*. at 169. In reaching this conclusion, the Court expressly applied the *Blockburger* same elements test. *See id*. at 166. The difference between *Brown* and this case is that, in *Brown*, the lesser offense was a necessarily included offense and thus did not require proof of an element that was not contained in the greater offense. Here, as explained above, assault with intent to rob and felonious assault each require proof of an element that the other does not require. *Cf. People v. Walls*, 265 Mich. App. 642, 645-46, 697 N.W.2d 535, 537 (2005) (felonious assault is not a necessarily included lesser offense of assault with intent to rob while armed). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his double jeopardy claim.

I.      *Ineffective Assistance of Counsel (Claim V)*

Finally, petitioner contends that his trial counsel was constitutionally ineffective for failing to properly object to the prosecutor's misconduct and at sentencing, failing to raise the double jeopardy issue, and failing to impeach Griffin with the fact that he received a deal in exchange for his testimony. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These

30

two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must

31

be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.    *Analysis*

The Michigan Court of Appeals rejected petitioner's ineffective assistance claim, concluding that because it was predicated on the other errors raised by petitioner, and because these claims of error were without merit, counsel's performance was not deficient.  *See Rutley*, 2010 WL 4866463, at *4.  This determination was reasonable.

It is well established that counsel cannot be deemed ineffective for failing to raise a meritless objection.  *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993).  As explained above, petitioner's double jeopardy, prosecutorial misconduct, and inaccurate sentencing

information claims are without merit, and thus counsel was not ineffective for failing to raise these objections. Further, the Michigan Court of Appeals determined that petitioner's sentencing guidelines were properly scored as a matter of state law. It is well-established that "[a] determination of state law by a state appellate court is . . . binding in a federal habeas action." *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007); *see also*, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Gall v. Parker*, 231 F.3d 265, 303 (6th Cir. 2000) ("Principles of comity and finality equally command that a habeas court can not revisit a state court's interpretation of state law."). Thus, any objection to the scoring of the sentencing guidelines would have been futile, and counsel was not ineffective for failing to raise such an objection. Finally, contrary to petitioner's assertion, the scope of the deal given to Griffin was fully explained to the jury. The prosecutor elicited the nature of the deal on direct examination, *see* Trial Tr., Vol. II, at 110, and both petitioner's counsel and his codefendant's counsel cross-examined Griffin about the deal, *see id*. at 142-43, 152-53. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

J.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing

33

of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of

34

Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

      2.    *Analysis*

If the Court accepts my recommendation regarding merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. The testimony of the victim and Griffin established beyond a reasonable doubt the elements of the offenses, particularly petitioner's intent to rob. Because it is clear that this Court may not reweigh the evidence or the jury's credibility findings, the resolution of petitioner's sufficiency of the evidence claim is not reasonably debatable, nor is it reasonably debatable that petitioner's weight of the evidence claim is not cognizable on habeas review. For the reasons explained above, the resolution of petitioner's prosecutorial misconduct claims is not reasonably debatable. Because it is clear that (a) guidelines scoring claims are not cognizable on habeas review, (b) *Blakely* does not apply to Michigan's indeterminate sentencing scheme, and (c) petitioner's sentence was not based on any inaccurate information, the resolution of petitioner's sentencing claims is not reasonably debatable. Further, because it is clear that the crimes of assault with intent to rob and felonious assault do not meet the *Blockburger* same elements test, the resolution of petitioner's double jeopardy claim is not reasonably debatable. Finally, because the deal given to Griffin was fully explored and presented to the jury, and because petitioner's other underlying claims are without merit, the resolution of petitioner's ineffective assistance of counsel claim is not reasonably debatable. Accordingly, the

35

Court should conclude that petitioner is not entitled to a certificate of appealability.

K.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 12/10/12

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record and  by
electronic means or U.S. Mail on December 10, 2012.

s/Eddrey Butts
Case Manager

37